THE HERKIMER COUNTY NATIONAL BANK, Respondent, *v.*
ALONZO RUST, Impleaded, etc., Appellant.

As to whether it is competent, in an action upon a bill of exchange against the drawer, for him to show by parol, that although he signed his own name without adding the word "agent," he did in fact sign and deliver it as agent for the drawee, and without intent to become personally liable, and that the bill was discounted by the payee with knowledge, *quære.*

(Argued October 21, 1884; decided November 25, 1884.)

THIS was an action upon a bill of exchange drawn by defendant Rust, upon defendants Rhodes & Server, payable to the order of plaintiff's cashier, and discounted by it.

The following is the opinion in full:

"If we concede to the appellant the doctrine for which he contends, that it was competent to give parol proof tending to establish that Rust signed and delivered the draft as agent of Rhodes & Server, and without intent to become personally liable thereon, and that the bank discounted it with knowledge of the fact, there is still a fatal difficulty in the way of a reversal of the judgment against him. We do not at all admit the soundness of the doctrine, but its discussion may be waived as needless in view of the fact that, with the parol evidence all in and every avenue of investigation thrown open, the referee has yet found as a fact that the draft was the draft of Rust, and not that of others through his agency. On the face of the instrument he is liable. There are no words importing the contrary. His omission to sign as agent leaves him presumptively liable as an individual. If the case stopped with the production of the draft, judgment against him was inevitable. He was permitted, however, to show the contrary if he could, and raise the question of fact whether, as between himself and the bank, his contract was personal or that of an agent without personal liability. He gave evidence tending to support his theory. He showed an arrangement made and existing with Rhodes & Server, by which, as their agent, he was to purchase cheese for them in the Little Falls market, putting himself in funds by drawing drafts upon them, which the bank discounted. It appeared that for a time he drew sight drafts, but later, desired to draw on time, when the bank required an indorser or additional security. As a result, Rhodes & Server gave to the bank their bond, with a surety, conditioned for the acceptance and payment of all drafts drawn by Rust for cheese purchased for them. This bond contained the following recital, viz.: 'Whereas, Alonzo Rust is duly authorized by Rhodes & Server to purchase cheese at the Little Falls board of trade for account of the said Rhodes & Server, and to make drafts in payment thereof on the said Rhodes & Server, such drafts to be discounted and cashed by said Herkimer County National Bank.' This proof was supplemented by the testimony of Rust, that in the negotiations respecting the time drafts, he said to the cashier of the plaintiff that he could not, for the

small commissions he was drawing, take any risk on these drafts; and by his further evidence, that the draft in suit was drawn, and its proceeds used, to pay for cheese bought for the drawees. But on the part of the bank an entirely different state of facts upon the vital point in controversy was shown. It was proved that Rust kept an individual account at the bank; that he was buying for numerous parties; that on Monday, which was market day at Little Falls, he would purchase cheese of different persons, paying by his checks upon the bank, which largely overdrew his account and left him debtor to the bank; that upon ascertaining the amount of his overdraft he would pay it and make it good by drawing drafts upon those for whom he purchased; that the bank permitted this to be done so long as he drew sight drafts, but when he desired to draw on Rhodes & Server on time, which would tend to accumulate a liability, security was demanded; that in the negotiation Rust was distinctly told by the cashier that Rhodes & Server were not a strong firm; that an indorser would be required on time drafts; that the bank would serve him as it did the rest of the cheese-buyers, that is, hold him first as drawer and then the indorser; that the same statement was made to him when renewals were asked; that the cashier cautioned him to be careful because of the financial weakness of his drawees, and that after the failure of Rhodes & Server he said, 'I suppose I am in for it,' and added that he was 'abundantly able to pay these drafts.' There was thus raised a question of fact for the decision of the referee whether, as between Rust and the bank, the former bound himself personally as drawer and so became surety for the drawees, as, notwithstanding his agency, he might have done; or whether he made the draft solely as agent, and without responsibility for its payment. The finding is against the appellant upon evidence both contradictory and admitting of contradictory inferences, and it must, therefore, control."

*J. A. Steele* for appellant.

*A. M. Mills* for respondent.

FINCH, J., reads for affirmance.
All concur.
Judgment affirmed.